IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **LANNY CARRUTHERS, an individual,** ) ) ) | |
| **Plaintiff,** ) ) ) | |
| v. ) ) | Civil Action No.: |
| **MIDLAND FUNDING, LLC, a corporation; MIDLAND CREDIT MANAGEMENT, INC., a corporation;** ) ) ) ) ) ) | |
| **Defendants.** ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendants states as follows:

1. This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), by the Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiff.

2. The Plaintiff was sued for a debt Plaintiff did not owe.

3. The lawsuit against Plaintiff was dismissed without prejudice.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

## JURISDICTION

4. Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Alabama and this suit arises out of their specific conduct with Plaintiff in Alabama. All the actions described in this suit occurred in Alabama.

5. Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

6. Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and the Defendants do business in this judicial district.

## PARTIES

7. Plaintiff Lanny Carruthers (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district in Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8. Defendant Midland Funding, LLC, ("Defendant" or "Midland[2]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama. It is a "debt collector" under the FDCPA. It is incorporated in Delaware and has its principal place of business in Nevada.

9. Defendant Midland Credit Management, Inc., ("Defendant" or "Midland") is a foreign debt collection firm that engages in the business of debt collection in Alabama. It is a "debt collector" under the FDCPA. It is incorporated in and has its principal place of business in California.

10. In this case, Defendants Midland Funding, LLC and Midland Credit Management, Inc. acted as agents for each other and all actions taken by one entity were taken on behalf of the other entity.

11. Defendant Midland Funding, LLC and Defendant Midland Credit Management, Inc. are hereinafter referred to collectively as "Midland."

12. Defendant Midland Funding, LLC, upon information and belief, allegedly buys defaulted consumer debt.

13. Defendant Midland Funding, LLC, assigns all collection activities for the defaulted debt to Midland Credit Management, Inc. This includes credit reporting.

---

[2] "Midland Funding, LLC" or "Midland Credit Management, Inc." means Midland directly or through its debt collectors, employees and agents and the collection law firm that sued Plaintiff, credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

3

14. These companies are operated from the same location, with the same ownership, and are otherwise treated as one company.

## RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

15. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

16. Congress recognized that there are four social ills caused by abusive debt collection: (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

17. Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

18. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

   (a) There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.
   (b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
   (c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**
   (d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt

   collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## The District Court Complaint

19. On June 15, 2011, Defendant Midland sued Plaintiff in the Small Claims Court of Colbert County, Alabama, with a case number of SM-2011-900120.

20. This suit was filed by the Zarzaur & Schwartz collection law firm.

21. In this suit, Defendant Midland asserted it was the owner of a certain debt allegedly owed by Plaintiff.

22. Defendant Midland alleged Plaintiff owed Midland $2,887.44.

23. Defendant Midland also claimed court costs.

24. Defendant Midland knows that Plaintiff has never done business with Defendant Midland.

25. No mention was made in the lawsuit that whoever sold the alleged debt to Midland disclaimed the accuracy of the records.

## Plaintiff Answers The Midland Lawsuit

26. Plaintiff did not and does not owe the debt to Midland.

5

27. Plaintiff, acting pro se, filed a Motion for Summary Judgment which the Court treated as a Motion to Dismiss on June 24, 2011.

28. Plaintiff's Motion to Dismiss, styled as a Motion for Summary Judgment, denied the allegations of Defendant Midland by asserting that Midland's complaint failed to state a claim upon which relief be granted.

29. Defendant Midland received a copy of this denial.

30. Defendant Midland understood that Plaintiff was refusing to pay on this debt.

31. Defendant Midland understood that Plaintiff disputed this debt.

32. Defendant Midland knew Plaintiff did not owe this debt.

### The Judge Sets The Midland Lawsuit For Trial

33. On October 19, 2011, District Court Judge Chad D. Coker set the case for trial on December 1, 2011.

### Midland Files Motion to Dismiss

34. At the trial itself, on December 1, 2011, the Judge Coker gave Plaintiff 60 days in which to get the Defendant properly served.

35. Midland filed a Motion to Dismiss without prejudice the case against Carruthers on April 2, 2012.

## Defendant Midland Falsely Credit Reports on Plaintiff's Credit

36. Credit reporting by Defendant Midland occurred before, during, and after the collection lawsuit.

37. Defendant Midland knew, or should have known, that its credit reporting was false, violating 15 USC § 1692e(8) and state law.

38. Defendant Midland knew that Plaintiff did not owe Defendant Midland any money on this debt.

39. Defendant Midland knew that Defendant Midland did not own the debt being credit reported.

40. Defendant Midland knew that Carruthers had denied owing the debt in his Motion to Dismiss styled as a Motion for Summary Judgment.

41. Despite Carruthers denial and dispute of the alleged debt Midland continued to report the Midland tradeline without showing it as disputed.

42. Carruthers' Equifax credit report reflects that Midland updated and reported to Equifax almost monthly and even into the fall of 2014 without showing the account or tradeline as disputed.

43. Midland also reported the account to Trans Union.

44. Carruthers' Trans Union credit report reflects that Midland updated its reporting in the fall of 2014 without showing the account or tradeline as disputed.

7

45. The reason for the false credit reporting was to force the Plaintiff into paying a debt not owed.

## Remaining Factual Allegations Against Defendant Midland

46. Defendant Midland has misrepresented the debt to Plaintiff and to the credit bureaus.

47. The debt being collected is a consumer debt as defined by the FDCPA.

48. Plaintiff is a "consumer" as defined by the FDCPA.

49. Defendant Midland is a "debt collector" as defined by the FDCPA.

50. Defendant Midland has been repeatedly sued in Alabama for false credit reporting on debts not owed by Alabama consumers.

51. Defendant Midland has full knowledge of what it is doing by failing to update disputed accounts to reflect that they are disputed.

52. The conduct of the Defendant Midland has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

53. It is a practice of the Defendant Midland to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

54. Defendant Midland knows its conduct is wrong but it has chosen to conduct itself in this wrongful manner as a matter of corporate policy.

55. All actions taken by employees, agents, servants, or representatives of any type for the Defendant Midland were taken in the line and scope of such individuals' employment, agency or representation.

56. This includes collection counsel for Defendant Midland who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Midland.

57. All actions taken by the Defendant Midland were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA.

58. Defendant Midland has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Midland is subject to statutory damages.

59. Defendant Midland is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection

employees and agents, including but not limited to violations of the FDCPA in its attempts to collect this debt from Plaintiff.

## SUMMARY

60. All of the above-described collection activities made to Plaintiff by Defendant Midland were made in violation of the FDCPA, including (but not limited to) §§1692e and 1692e(8).

61. The above-detailed conduct by the Defendant Midland of harassing Plaintiff in an effort to collect this debt resulted in actual damages to the Plaintiff.

62. This series of abusive collection actions by Defendant Midland caused Plaintiff stress and anguish.

63. Plaintiff has suffered actual damages as a result of these illegal actions by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## CAUSES OF ACTION

### COUNT I.

**VIOLATIONS OF THE FAIR DEBT COLLECTIONPRACTICES ACT
15 U.S.C. § 1692e**

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. Section 1692e states "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section."

66. Specifically, paragraphs 2-4, 24-32, 36-57 support the 1692e claim.

67. As a result of Defendant Midland's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Midland.

## COUNT II.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(2)

68. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. Section 1692e(2) states "The false representation of the character, amount, or legal status of any debt;"

70. Specifically, paragraphs 2-4, 24-32, 36-57 support the 1692e(2) claim.

71. As a result of Defendant Midland's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Midland.

## COUNT III.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692e(8)

72. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

73. Section 1692e(8) states "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

74. Specifically, paragraphs 2-4, 24-32, 36-57 support the 1692e(8) claim.

75. As a result of Defendant Midland's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Midland.

## COUNT IV.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692e(10)

76. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

77. Section 1692e(10) states "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

78. Specifically, paragraphs 2-4, 24-32, 36-57 support the 1692e(10) claim.

79. As a result of Defendant Midland's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Midland.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory and nominal the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

_____
John G. Watts (ASB-5819-t82j)
M. Stan Herring (ASB-1074-n72m)
**Watts & Herring, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**

PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.

_____
Attorney for Plaintiff

13

**Serve defendants via certified mail at the following addresses:**

Midland Funding, LLC
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104

Midland Credit Management, Inc.
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104